In State v. Hopper, 114 La. 561, 38 South. 452, this court said:

"As a matter of course the point on which the testimony of the accomplice needs corroboration is that of connection of the prisoner with the crime [citing authorities], and the charge ought to make that very clear to the jury; otherwise it does more harm than good, since it is hardly conceivable that the story of an accomplice should not be corroborated on the other main facts, and such charge might lead the jury to attach to this corroboration of undisputed facts an importance it does not deserve."

For this error of the judge, we are of opinion that the verdict and sentence must be reversed.

[5] Bills 5 and 6 relating to defendant's motion for a new trial and in arrest present nothing for review, because they merely state that said motions were overruled by the court for certain reasons, and no documents, not even the motions themselves, were made parts of the bills.

It is therefore ordered that the verdict and sentence herein be set aside, and this case be remanded for a new trial according to law.

---

(75 South. 418)

No. 22449.

ROTH v. RUSSELL.

(May 14, 1917.)

*(Syllabus by the Court.)*

1. DAMAGES ⟞⟝20—PERSONAL INJURY—PROXIMATE CAUSE.

A physical injury to the back which precipitated the troubles incident to a congenital enlarged lumbar vertebra will be considered, in the absence of other proof, as the proximate cause, which set the other causes of damage in motion.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 55–57.]

*(Additional Syllabus by Editorial Staff.)*

2. MASTER AND SERVANT ⟞⟝279(5)—ACTION FOR INJURY — FOREMAN — SUFFICIENCY OF EVIDENCE.

In a servant's action for injury, evidence *held* to sustain a finding that another employé of defendant performed the duties of foreman or subforeman of the squad of laborers with which the servant was working when injured.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 978.]

3. MASTER AND SERVANT ⟞⟝279(5)—ACTION FOR INJURY—NEGLIGENCE OF FOREMAN—SUFFICIENCY OF EVIDENCE.

In such action, evidence *held* to sustain a finding of the foreman's negligence at the time of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 978.]

4. DAMAGES ⟞⟝167—EVIDENCE—EXPECTANCY OF LIFE.

In such action, the fact that he had consumption at the date of the trial was relevant on the question of his life expectancy.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 487–489.]

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Suit by Andrew Roth against John S. Russell, proprietor of the Russell Motor Car Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Menefee & Fortier, of New Orleans, for appellant. James Legendre and Edward Rightor, both of New Orleans, for appellee.

LAND, J. This is a suit to recover $10,000, for personal injuries alleged to have been sustained by the plaintiff, while working as a common laborer for the defendant, through the negligence of one James Feehan, foreman, or boss of defendant, while engaged in removing chassis, that is, the metal bodies of automobiles, weighing about 1,200 pounds each, from box cars at the Frisco sheds in the city of New Orleans.

The petition represents that due to their

weight, said chassis were being rolled out on pieces of gas pipe, and that the plaintiff was directed by said foreman to give close attention to said rolling, and while so engaged one of said chassis became jammed, and there was some difficulty in its removal.

"That the plaintiff stood as directed by said foreman, between said chassis and the wall of the car, against which the body of an automobile was stocked, when said foreman took a crow bar, and, directing plaintiff to retain said position, pried violently against it, and carelessly and negligently, without warning to petitioner of the danger of the position he was ordered to assume, and without such knowledge by the petitioner, pushed said chassis against the body of petitioner so violently that he was jammed between the same and the automobile body against the wall of the car."

The petition then proceeds to set forth the various injuries alleged to have been sustained by plaintiff on that occasion.

Defendant in his answer admits the alleged employment of plaintiff in removal of chassis by the use of gas pipes, but avers that plaintiff, while so engaged, through his own fault bumped himself against the body of an automobile near the spot where the plaintiff was working; and in consequence seemed stunned, rather than unconscious, but that plaintiff, having received aid in the form of an alcoholic stimulant, after some time, apparently well, left his work and went home, and that the subsequent treatment of the plaintiff at the Touro Infirmary was not due to the alleged injuries.

The defendant in his answer specially denies that the aforesaid Feehan was a vice principal, and avers that he was a fellow servant of the plaintiff.

Defendant finally in his answer denies all the other material allegations of the petition.

The case was tried before a jury which found a verdict of $1,500 in favor of the plaintiff.

From a judgment pursuant to the verdict, the defendant has appealed.

[2] The first question of fact in logical order is whether Feehan performed the duties of foreman, or subforeman, of the squad of laborers engaged in the work of removing the chassis on the occasion of plaintiff's injuries.

The plaintiff and five other co-workers testified that Feehan acted as foreman, giving orders and directions, when the regular foreman was not present, and one of them stated that "Feehan hired us."

The foreman and Feehan testified that the latter was never employed or engaged as assistant foreman, and never was authorized to hire and discharge men.

It was admitted that Feehan did hire one or more men, but it was explained that in doing so he acted merely as a messenger. Feehan was a mechanic, receiving twice the wages of the plaintiff and other laborers, and that he gave orders and directed the work was sworn to by half a dozen witnesses.

The credit to be attached to the witnesses pro and con on this issue was a question for the jury, and we see no good reason to set aside their finding in favor of the plaintiff.

[3] On the question of the negligence of Feehan, acting as foreman, we are not prepared to say that the jury erred in finding in favor of the plaintiff—Feehan was giving orders and directing the work, and with his crow bar created the unusual force which moved the chassis suddenly forward, and threw, or jammed, the plaintiff against the automobile top in his rear.

Feehan, as a witness, explained and illustrated before the jury how the accident happened, but seems to have failed to convince them of the correctness of his theory.

[1] As to the injury, the evidence shows that the plaintiff was knocked down and rendered unconscious by the blow, and the lower part of his back was bruised.

For three or four months after the accident the plaintiff complained of pains in his back and legs, and finally was advised to apply to

the Touro Infirmary for treatment. He did so, and was examined and treated by Dr. Hatch, a specialist in orthopedic surgery, assisted by another surgeon.

Dr. Hatch testified in the case, and, among other things, stated that he made a careful diagnosis of Roth's case and—

"found his condition to be due to the enlargement of the transverse process of the last lumbar vertebra"; "that is to say the transverse processes are long enough and wide enough to press on the two bones, the ilia, as they go up on the sides, and the nerve trunks which supply the legs are pressed on, thereby giving the symptoms that the patient complains of—a man suffering from this condition, and who is under any strain at all, would naturally be made much worse by that than a man in a normal condition."

Dr. Hatch further testified that the plaintiff was suffering from a congenital malformation of the spine, for which the best treatment was rest; that such a condition could not be created by a severe fall or blow; but "a man having an enlarged fifth lumbar vertebra, strains his back easier than a man having a normal fifth lumbar vertebra, and any strain of this nature may further incapacitate this type of man than a man with normal lumbar vertebra."

Dr. O'Ferrall, who assisted Dr. Hatch in the treatment of the plaintiff, stated that they found that he had "a congenital abnormality of his lower spine," "that a man with such an infirmity may do heavy work," "that the probabilities are that an injury would increase the trouble," and that "the history of all these cases is that the symptoms are precipitated by some injury."

It was shown by medical evidence that at the time of the trial the plaintiff had tubercular consumption. The expert thought that the plaintiff had suffered from the disease for several years, but could not fix the dates.

This evidence was adduced by defendant without objection on the part of the plaintiff, for the purpose of showing that the bad physical condition of the plaintiff at the date of the trial was due to disease, and not to the alleged injuries.

But aside from the question of consumption, there was evidence tending to show that the injuries sustained were of a nature to precipitate the troubles incident to the enlarged lumbar vertebra.

The fact that within a short time after the accident, such troubles arose for the first time tends to show a causal connection between them and the injuries sustained by the plaintiff.

But as plaintiff was in good health and strength at the time of the accident, the injury must be considered as the proximate, efficient cause of damage which set the other causes in motion, in the absence of evidence that the enlarged vertebra produced or aggravated the damage independently of the said injury. Lapleine v. Railway & Steamship Co., 40 La. Ann. 665, 4 South. 875, 1 L. R. A. 378.

[4] The fact that the plaintiff had consumption at the date of the trial is relevant to the question of his life expectancy.

Under the peculiar facts and circumstances of the case, we see no good reasons for the reversal or the amendment of the judgment.

Judgment affirmed.