LANDRY ET AL. v. PHOENIX UTILITY COMPANY

———

(November 18, 1929. Opinion and Decree.)
(December 16, 1929. Rehearing Refused.)
(February 5, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

———

M. C. Scharff, of New Orleans, attorney for plaintiffs, appellants.

Thatcher, Browne, Porteous & Myers, of Shreveport, attorneys for defendant, appellee.

WESTERFIELD, J. Plaintiff, as the surviving widow, brings this suit on her own account and on behalf of her minor children against the defendant for compensation for the death of her husband, Woolfred L. Landry, who was injured in the course of his employment on the 12th day of May, 1927, and died on the 18th day of July, 1927, or two months and six days thereafter.

It is admitted that the deceased was injured in the course of his employment, the injury consisting of a severe blow on the chest by a piece of timber, causing a double fracture of the eighth rib and a simple fracture of the ninth rib. It is denied, however, that the accident and injury had anything to do with Landry's death, which was admittedly due to hemorrhages resulting from ruptured ulcers of the duodenum. It is plaintiff's contention that the ulcers were either caused by the blow on Landry's chest or were so aggravated, as a result of the blow, that it precipitated his death. On the other hand, defendant contends that there was no causal relation between the accident and death.

The burden of proof rests upon plaintiff to establish the fact that the wounds received by decedent were either the sole or contributing cause of his death. Wilson v. Harris Oil Co., 3 La. App. 195; Ash-

craft v. La. Central Lumber Co., 4 La. App. 113; Behan v. Honor, 143 La. 349, 78 So. 589, L. R. A. 1918F, 862.

An autopsy was performed by Dr. Couret, a pathologist connected with the staff of Hotel Dieu and Charity Hospital, who, as a result of his anatomical diagnosis, expressed the opinion that the fracture of Landry's ribs had nothing to do with his death, which resulted from hemorrhages from duodenal ulcers. His findings were multiple ulcers of the duodenum, hemorrhages and acute and chronic diffuse nephritis.

There is considerable expert medical testimony in the record and it is, as is not unusual in such cases, conflicting. Dr. Menendez, who is supported in a measure by Dr. Compagna, and Dr. Fredericks, after first stating that the cause of gastric or duodenal ulcers is unknown, and to that extent all experts in the case seem to be in agreement, declared that it was his opinion that the ulcers which caused Landry's death were due to the blow received by him in the chest. He maintained that gastric or duodenal ulcers might be caused by external trauma. Going into detail he stated that it is possible for blood clots or emboli to form in the blood as a result of the trauma, and that these emboli, being taken up by the blood stream, can find lodgment in any part of the body, for example, entering the brain they can cause paralysis and death, and finding lodgment in the duodenum or stomach can produce ulcer formations. In the doctor's own language, "You can have a simple fracture and still get thrombosis and embolic infraction, and this case results in ulcers."

Dr. Denegre Martin, Dr. Benjamin Ledbetter, Dr. C. Grenes Cole and Dr. Couret, the pathologist, all testify that the death of Landry was in nowise due to the accident, either as the sole or contributing cause. They were most emphatic in saying that Dr. Menendez was mistaken and that it was impossible for gastric or duodenal ulcers to be caused by external trauma. All of defendant's experts testify that an individual might suffer from ulcers of the stomach or duodenum (both maladies seem to be associated in the discussion and to be regarded as similar in origin and development) without being aware of the fact until the disease had made such progress as to be beyond medical control.

The plaintiff in this case was a carpenter and all the evidence is to the effect that he was in good health at the time of his injury, enjoyed a good appetite and suffered no physical discomforts whatever. After the accident he complained of pains in his side, which became more severe notwithstanding the treatment of several doctors, who attributed his suffering to the injury to his chest. It was not until a few days prior to his death that an x-ray revealed the presence of the duodenal ulcers, which caused the hemorrhages which caused his death.

To the untutored mind of this court it would appear that a severe injury, resulting in the fracture of two ribs, one of them in two places, such as was suffered by the deceased, Landry, would have some causal relation, or would at least, have contributed to his demise, which occurred about two months after the injury, particularly since the testimony is to the effect that he had previously enjoyed good health and was not known to complain of any physical illness prior to the accident. This conclusion to the lay mind would seem most reasonable, but we are not privileged to indulge our impressions in a mat-

ter so technical, in view of the expert testimony in the record, which clearly preponderates to the effect that duodenal ulcers, the admitted cause of Landry's death, could not be produced as a result of external trauma. The expert medical testimony also preponderates to the effect that the trauma was not a contributing cause, some of the physicians advancing the view that the nephritis, which the autopsy disclosed as present, was most likely an important factor in the result because as, Dr. Martin puts it, "If there is anything in God's world that will lower a man's resistance, that will do it."

The trial court, who heard the doctors testify, denied recovery upon the same ground upon which we base our conclusion, the preponderance of the expert medical testimony in favor of defendant and if we and our brother below have erred, the responsibility must rest with the medical profession and not the judiciary.

For the reasons assigned the judgment appealed from is affirmed.