BRENT v. UNION INDEMNITY CO.

(July 1, 1931. Opinion and Decree.)
(October 19, 1931. Rehearing Refused.)
(November 30, 1931. Writ of Certiorari and Review Refused by Supreme Court.)

Edward Rightor and William H. Sellers of New Orleans, attorneys for plaintiff, appellant.

J. C. Henriques, Frank T. Doyle and Harry M. Mayo, of New Orleans, attorneys for defendant, appellee.

DUNBAR, J. ad hoc. This is a suit by William C. Brent against the Union Indemnity Company, as insurer of plaintiff's employer, for compensation for permanent total disability as a result of an accident that occurred July 31, 1929, admittedly within the scope of plaintiff's employment.

Defendant paid plaintiff compensation from the date of the accident until approximately October, 1930, when further payments were refused on the ground that the accident was not the proximate and legal cause of the condition from which the plaintiff was then suffering, but that the condition was due to the normal and usual development and was the result of a pre-existing disease. The plaintiff claims compensation for permanent total disability for a period of 400 weeks, subject to a credit for compensation paid.

Judgment was rendered against the plaintiff, and he has appealed.

Plaintiff was employed as a carpenter by Caldwell Brothers and Bond Brothers, contractors, in the erection of the new Municipal Auditorium. On July 31, 1929, at about 9:30 p. m., while plaintiff was working upon a scaffold, a cross member supporting a piece of planking upon which he was standing broke in half, and plaintiff was precipitated towards the ground. In falling plaintiff struck another cross member about eight or ten feet below, and then fell to the ground, a distance of another two feet. As a result of the fall, plaintiff fractured the fifth and sixth ribs on the left side posteriorly. He remained at work after the accident during the rest of the night, and the next day, on account of pain resulting from the fall, he was sent to the company's physician for treatment. Subsequently, plaintiff called in his own physician, Dr. Cole, who strapped him and treated him for the fracture of the ribs. Between eight and nine days after the accident, plaintiff discovered a tumor or mass forming in his upper abdomen. It later developed that this tumor or mass formation, accompanied by pain, resulted from the beginning of an acute condition or crisis due to hydropyonephrosis with stone; that is to say, a badly diseased kidney of long standing and the presence of a kidney stone. It became necessary to operate on plaintiff on December 18, 1929, and his kidney, which was badly diseased and which contained a large kidney stone, was removed, producing the total disability alleged.

The contention of counsel for plaintiff is that this stone which they claim was in the pelvis of the kidney where stones usually form, was, as a result of the fall, firstly, either dislodged from the wall of the pelvis, or, secondly, if unattached, was caused as a result of the sudden jolting which the kidney received in the fall, so as to become lodged in the head of the ureter where it joins the kidney at the pelvis, and as a result the secretion of urine formed the mass which plaintiff noticed, and this mass of urine diseased the kidney and necessitated its immediate removal by an operation.

Defendant's contention is that the accident and resulting trauma had nothing to do with the formation of the kidney stone or the diseased condition of the kidney,

and that on account of the unusually large size of the kidney stone which was later removed, it was clear that the disease had existed and the stone had been forming for a long period prior to the accident, and that the later development of the tumor and acute condition necessitating an operation and the removal of the kidney and stone was a development normal and natural in the light of medical science and experience in connection with such diseases, and that the acute condition of. the kidney would have resulted and the necessity for the operation would have arisen in the same way and at the same time in the ordinary course of events.

It is admitted that the kidney disease and kidney stone existed long prior to the accident, and the only issue presented is one of causation, namely, whether or not the trauma accelerated the diseased condition and caused a "flare-up" necessitating an immediate operation before the normal development of the disease would have resulted in such a crisis and necessity for an operation.

Only questions of fact are involved in the case, and the record consists primarily of the testimony of the expert witnesses called by the plaintiff and defendant. The expert testimony deals with medical and scientific facts, and a discussion of the symptoms, inferences and conjectures with reference to the problem of causation involved in this case, which is peculiarly and wholly within the field of medical science.

Counsel for plaintiff in their brief argue with considerable emphasis that the conclusions and opinions of some of the experts for defendant were based on an erroneous assumption as to the fact in relation to the period of time after the operation within which the tumor and pain in the abdomen of plaintiff appeared for the first time. Counsel for plaintiff contend, in this connection, that the tumor as well as the pain, was discovered and complained of by plaintiff within four or five days after the accident, and not eight or nine days after the accident, which fact was assumed in connection with the reasoning and opinions of some of the experts. This difference in time is emphasized as important by counsel for plaintiff, because one of the reasons given by the experts for their opinion that there was no connection between the accident and the beginning of the acute condition necessitating the operation, was that if the fall and resulting tumor had injured the kidney, causing the "flare-up" and crisis in plaintiff's diseased kidney condition, there would have been immediate. symptoms of pain and swelling in the abdomen within 24 to 48 hours after the accident, and, according to one expert, "within two or three days at the most." Counsel for plaintiff argue that according to Dr. Cole's testimony, the tumor and pain in plaintiff's side were complained of by plaintiff and discovered four or five days after the accident, and that the expert testimony, therefore, in the light of this correction, would tend to support plaintiff's theory of the case. The record, however, in this connection shows that Mr. Brent, the plaintiff, was asked how long it was after the accident when he first noticed a pain or a lump in his side, which indicated the beginning of the condition, and his reply was: "I am sure it was about between eight and nine days." Although on one occasion Dr. Cole did testify, as counsel for plaintiff pointed out, that the tumor or lump and pain indicating the beginning of the acute condition were discovered four or five days after the accident (which was inconsistent with plaintiff's testimony), he

later corrected this statement and corroborated plaintiff's testimony when he was questioned by the court on this point, and plaintiff's testimony was called to his attention. In the light of the testimony taken as a whole, therefore, it seems to us reasonable to accept as a fact that the tumor and pain were not complained of or noticed until between eight and nine days after the accident, which is the fact assumed, among others, by the experts in arriving at their conclusion.

The three physicians who testified as experts for the defendant, Drs. Martin, Mattes and Menendez, one of whom specialized in urology, or genito-urinary diseases, stated very positively and unequivocally that after studying the history and facts of the case from a medical standpoint, there was no connection of any kind between the accident and the tumor and acute condition of the diseased kidney resulting in the operation. It is true that these three physicians, when pressed by counsel for plaintiff in cross-examination, admitted that plaintiff's theory of the case was possible. At the same time, however, they made it very clear that in their opinion the contention or theory of plaintiff that the accident brought on the crisis and necessity for the operation was neither probable nor plausible, and merely a remote possibility.

We are very much impressed with the fact that Dr. Gordon, the specialist in urology, or genito-urinary diseases, who was called by the plaintiff as an expert, did not state that in his opinion the accident and trauma caused the "flare-up" and beginning of an acute condition necessitating an immediate operation before it would have developed in the normal course of the disease, nor did he state that it was even probable that the accident or trauma was the cause for the necessity of an immediate or earlier crisis and operation. On the contrary, Dr. Gordon, in this connection, testified only that it was possible the accident caused the crisis, but would not say it was probable under the circumstances of the case.

Dr. Menville, an expert in the field of radiology, was also called by plaintiff as an expert witness on the questions of medicine involved in the case. Dr. Menville voluntarily stated on two occasions that he had not seen enough cases of the type under consideration to enable him to answer accurately some of the questions propounded to him, and although his testimony on the whole favors the plaintiff's theory of the case, it is conservative, cautious and qualified in relation to the problem of causation.

The testimony of plaintiff's physician, Dr. Cole, who performed the operation and removed plaintiff's kidney, is rather positive in support of plaintiff's theory of causation. Dr. Cole, at one point in his testimony, stated that in his opinion, "the fall evidently excited the condition, stirred it up and possibly started to dislodge that stone and possibly did some damage to the pelvis of the kidney, and possibly started this condition, this acute condition, this 'flare-up' in other words." Dr. Cole seemed to consider as one of the most important reasons justifying his conclusions in this regard the fact that the plaintiff had not suffered from or been conscious of his diseased condition prior to the accident. The weight of expert testimony, however, in this connection seemed to be that there was nothing unusual about plaintiff's ignorance of his condition and the fact that he did not suffer from the condition prior to the time of the crisis and appearance of the tumor after the ac-

cident. It seems that the experts agree that a diseased kidney condition, similar to plaintiff's, and the development of a kidney stone may go on for a considerable period of time without any pain or distinct symptoms, and then in the ordinary and normal course and development of the disease, a crisis is reached, swelling appears accompanied by pain and an acute condition arises which results in the necessity for an operation.

An analysis in detail of the testimony with reference to the discussion of the various symptoms, medical facts and inferences involved in the question of causation, would serve no useful purpose. On the whole, the weight of expert opinion seems to be that although possible, it was not probable, or a reasonable and natural inference from all of the facts and circumstances, that the accident accelerated the previously existing kidney disease of the plaintiff, and brought on an earlier operation than would have normally been the case.

It is, of course, well settled, in Louisiana at least, since the decision of the Supreme Court in the case of Behan v. John B. Honor Co., 143 La. 348, 78 So. 589, 590, L. R. A. 1918F, 862, "that the fact that a person was already afflicted with a dormant disease that might some day produce physical disability, is no reason why he should not be allowed damages or compensation for a personal injury that causes the disease to become active or virulent and superinduces physical disability." See, also, Sutton v. New Orleans Public Service, Inc., 14 La. App. 684, 130 So. 859. The same rule has been announced in other jurisdictions. See Hilliard v. Chicago City R. Co., 163 Ill. App. 282; Larson v. Boston Elevated R. Co., 212 Mass. 262, 98 N. E. 1048.

It is equally well established, however, that the plaintiff bears the burden of proof, with reasonable certainty, that the disability was the result of the injury. Wilson v. Harris Oil Co., 3 La. App. 195; Ashcraft v. Louisiana Central Lbr. Co., 4 La. App. 112; Piske v. Brooklyn Cooperage Co., 143 La. 455, 78 So. 734.

The Louisiana Supreme Court, in Haddad v. Commercial Motor Truck Co., 150 La. 327, 346, 90 So. 666, 673, has gone even further and said that evidence of probability alone is not sufficient to establish causation with legal certainty. In this connection the court said:

"Upon the whole, and after a careful reconsideration of the case, we have concluded that plaintiff has not shown that the death of her husband was from an accident arising out of his employment. And that on the contrary, the defendant has shown that the death was in all probability from the tumor having ruptured in due course of its development.

"Even if the theory of plaintiff's case— that the man had fallen out of the truck as the result of some accident and had come to his death by being pressed against the ditch embankment—were probable, this would not suffice; for the matter would still be involved in grave doubt, so much so that the court could not know with any sort of certainty that the defendant was liable. A case must be made out to a legal certainty; this is elementary, and is as true in the case of a suit under the Workmen's Compensation Act, like the present, as in any other. Piske v. Brooklyn Cooperage Co., 143 La. 455, 78 So. 734."

In the present case, causation is not proved with reasonable certainty, but, on the contrary, the preponderance of the testimony, as we have already pointed out, is to the effect that the accident or trauma was a possible, but not the probable cause of the disability, and as we have seen, the Louisiana Supreme Court has

indicated that even evidence of probable causation would be insufficient to sustain the burden of proof required of a plaintiff in cases of this character.

As laymen, and without the benefit of experience and learning in medical science and history, we must admit that plaintiff's theory as to causation is tempting and persuasive, in view of the apparently logical sequence of events in this case. The question of causation, however, in this case, is a problem peculiarly within the domain of medical science and the opinion of trained experts, Weller et al. v. Turnerized Roofing Co. et al., 14 La. App. 150, 129 So. 443, and we must be governed largely by the conclusions and opinions of these experts based on the circumstances and medical history of the case, and this expert opinion, when analyzed and considered as a whole, as we have heretofore pointed out, does not establish plaintiff's theory of causation with reasonable certainty.

The trial court heard the experts testify and denied recovery evidently upon the same ground upon which we base our conclusions, and as was so aptly said by Judge Westerfield in Landry v. Phoenix Utility Co., 14 La. App. 334, 124 So. 623, 625, a case in which somewhat similar problems were involved:

"If we and our brother below have erred, the responsibility must rest with the medical profession and not the judiciary."

For the reasons assigned, the judgment appealed from is affirmed.

WESTERFIELD, J., and MORENO, J. ad hoc, participating.