## PEPPERS v. TOYE BROS. YELLOW CAB CO. et al.

### No. 17277.

Court of Appeal of Louisiana. Orleans.

Oct. 21, 1940.

Rehearing Denied Nov. 18, 1940.

Spencer, Phelps, Dunbar & Marks, of New Orleans (Louis B. Claverie, of New Orleans, of counsel), for appellant.

A. D. Danziger, of New Orleans, for appellees.

McCALEB, Judge.

On June 8, 1938, the plaintiff, Jerry C. Peppers, a man 70 years of age, was a passenger in a taxicab owned by the defendant, Toye Bros. Yellow Cab Company, and operated by its employee, Allen J. Laborde. While the cab was proceeding down Camp Street in the City of New Orleans, it collided with an unidentified automobile at or near the corner of Gravier Street.

Upon the happening of the accident, the plaintiff, who was seated in the rear of the cab, was thrown forward from the rear seat and his head struck the middle portion of the partition which separates the front and rear seats of the taxicab. As a consequence, he received certain contusions to his head, face and arm. Immediately thereafter, he was taken to his home in one of defendant's taxicabs where he was examined by Dr. Martin O. Miller, a physician in the employ of the defendant company. Later that evening, he was examined by Dr. Lloyd J. Kuhn, who had been requested by plaintiff's employer, Mississippi Barge Line, to call upon him. Dr. Kuhn found that the plaintiff was suffering from contusions, bruises and a slight concussion of the brain and advised plaintiff to go to the Touro Infirmary where he could be kept under observation until his hurts were mended. The plaintiff was accordingly taken to the Touro Infirmary where he received treatment for his wounds for two or three days. On the third day, plaintiff suffered a considerable hemorrhage from his bowels and it was discovered that this hemorrhage resulted from a previously existing and dormant colitis or inflammation of the colon. In view of this complication, it became necessary for the plaintiff to remain at the Touro Infirmary under treatment until July 10, 1938. On that date he was permitted to leave the hospital and return to his home, where he remained under the treatment of his physicians until October 19, 1938, when he was able to return to his work.

In this suit, plaintiff claims that the accident was caused through the negligence

of the cab driver and he prays for an award of damages in the sum of $5,781.51 in compensation for his injuries. The defendant company resisted liability in the district court on the ground that the accident occurred through the negligence of the driver of the unknown car which collided with the taxicab and averred that its employee was free from fault. It also denied that the plaintiff received any injuries of consequence as a result of the accident and, alternatively, pleaded that plaintiff was guilty of contributory negligence.

On the issues thus joined, a trial was had which resulted in a judgment for damages in plaintiff's favor in the sum of $250. Plaintiff has prosecuted this appeal in which he complains that the award of the trial judge is grossly inadequate in view of the injuries sustained by him in the accident.

■ The defendant has neither appealed from the judgment of the district court nor has it answered plaintiff's appeal. Consequently, this court is without right or power to reverse the judgment or to reduce the amount of the award in plaintiff's favor. See Westwego Canal & Terminal Co., Inc. v. Louisiana Highway Commission, 189 La. 870, 181 So. 429; Pecoraro v. Kopanica et al., La.App., 173 So. 203; Dupuy v. Godchaux Sugars et al., La.App., 184 So. 730; and Douga v. Ancona Baking Co., Inc., La.App., 193 So. 271. Thus it will be seen that the sole question presented for our consideration is whether the award granted by the district judge is inadequate.

There is no dispute between the parties that the direct and immediate physical injuries received by the plaintiff in the accident consist merely of contusions and bruises about the head and face. Dr. Miller, the physician for the defendant company, says that the plaintiff sustained contusions of his forehead, his elbow and cheek; that his general physical condition was good; that his pulse and blood pressure were regular for a man of his age and he estimates that plaintiff would be disabled for a period of three to five days.

Plaintiff's physician, Dr. Kuhn, fully agrees with the diagnosis of Dr. Miller that plaintiff's injuries consisted of contusions and bruises and that plaintiff would have, in the ordinary course of events, recovered therefrom within a few days. He states, however, that, in view of the fact that plaintiff was an old man 70 years of age, he felt that it was advisable to send him

to the Touro Infirmary and keep him under observation there for a few days. He further asserts that he was prompted to render this advice because plaintiff had told him that he was knocked unconscious after the accident and it was feared at that time that plaintiff might have suffered a slight concussion of the brain. Dr. Kuhn also testified that, after plaintiff was admitted to the Touro Infirmary, he "apparently came along all right" but that, on the third day, when he was allowed to get out of bed, he suffered a considerable hemorrhage from his lower bowel; that about a week later on June 17th plaintiff had another hemorrhage and that it was therefore necessary, in order to determine the cause of these hemorrhages, to make scientific investigations. He says that a proctoscopic examination was made of plaintiff's bowel which disclosed that there were several areas of small hemorrhages in the lower part thereof with a few active bleeding points. The doctor came to the conclusion, after making various tests, that the hemorrhages were due to a pre-existing and dormant colitis or inflammation of the colon and that this disease had "flared up" or become active shortly after the happening of the accident.

Plaintiff's counsel attempted to prove by Dr. Kuhn that the injuries received by plaintiff in the accident were the underlying cause of the colitis which plaintiff suffered shortly thereafter. A reading of the testimony of the doctor on this question reveals that he is unwilling to swear positively that the blow received by plaintiff in the accident superinduced the flare up of the dormant condition in the colon but he does say that there is a *reasonable* possibility that such was the case. The doctor was asked the following question:

"Q. Tell us whether or not the shock and blow that Mr. Peppers received in this accident had any connection with this condition that existed. A. Whatever answer I would give would be based on an opinion of my own. And I cannot answer that directly yes or no. It could possibly, because we know that an individual who could get along perfectly well in a normal course of events may go on for years with some existing lesion which never gives him any trouble, but if something upsets his normal activities and course of events, then it might possibly relight or light up an old injury, I mean an injury might relight up an old infection or existing functional disturbance."

The foregoing answer to the question propounded is illustrative of Dr. Kuhn's opinion with respect to the cause of the hemorrhages suffered by plaintiff shortly after the accident. He further relates that, from the history given him by Mr. Peppers and his daughter, Mrs. Myrtle Kopp, which showed that plaintiff was enjoying good health prior to the accident and that he was a hard working man and living according to a set schedule or regular routine, it is likely that the fact that plaintiff was compelled, by reason of the accident, to be confined in bed for a few days would cause certain circulatory changes in his system and thereby make active the dormant condition which had existed previously in his lower bowel.

The expert testifying for the defendant was Dr. Miller. An examination of his evidence discloses to our satisfaction that he is substantially in accord with the opinion given by Dr. Kuhn. Dr. Miller is unwilling to say positively that the flare up of the dormant disease had any connection whatever with the accident but he readily admits that it is possible, from the sequence of events, that there was a causal connection.

The district judge, in his reasons for judgment, states that: "The plaintiff claims that while the injuries he received at the time of the accident appeared to be only minor, they resulted in complications arising thereafter which required him to be confined to the hospital, where he remained four weeks, and that he was otherwise disabled for 17 weeks before he could return to work. This court is satisfied from the nature of the accident that this man was not severely injured, and that the condition complained of by the plaintiff could not have resulted from the injuries received in the accident. This opinion is borne out by the testimony of both plaintiff's and defendant's physicians, that it is highly improbable that the accident resulted in the conditions of which the plaintiff complains."

The judge accordingly awarded to plaintiff the sum of $250 which is in line with the quantum of damages which has been previously given by the courts for such minor injuries.

Counsel for the plaintiff, in argument and in brief in this court, do not complain that the award allowed Mr. Peppers for the contusions and bruises is inadequate but they maintain that the judge was in error in finding that the expert testimony revealed that it was highly improbable that the flare up of the dormant colitis had any causal connection with the accident and in concluding that it could not have happened. We quite agree with counsel's appreciation of the medical evidence and we believe that our Brother below was mistaken in resolving that the hemorrhages suffered by plaintiff could not have been activated by the traumatic injuries and that the experts stated that it was highly improbable that such was the case. A careful analysis of Dr. Kuhn's testimony plainly discloses that it was his opinion that there was a reasonable possibility, in view of all of the circumstances surrounding the case, that the injuries received in the accident caused the flare up of the dormant disease. And, as we have said before, the defendant's expert, Dr. Miller, does not disagree with Dr. Kuhn as he admits that the flare up complained of could possibly happen.

Counsel for the defendant, however, maintains that, even though there is a possibility that the dormant colitis was "lighted up" as a result of the accident, such evidence is too conjectural to warrant a finding that the suffering endured from the pre-existing disease had causal connection with the accident. He reminds us of the time honored rule of practice that the burden rests upon the plaintiff to prove his damages with legal certainty and that the courts will not permit a recovery where the injury complained of is based upon possibilities.

Counsel for plaintiff, on the other hand, earnestly postulate that, in determining whether a claimed injury has causal connection with other injuries received in a particular accident, the courts should look into all of the facts and circumstances, i. e., the previous health and condition of the injured party, the time of the accident, the time the complications set in, etc., and they say that the Supreme Court of this State has definitely determined that, where a dormant disease or other pre-existing injury has become activated within a short time from the date of an accident, a presumption arises that the flare up of the old illness has been superinduced or set into motion by the injuries received in the accident. In support of their position, counsel direct our attention to the cases of Lapleine v. Morgan's Louisiana & Texas R. & S. S. Co., 40 La.Ann. 661, 4 So. 875, 1 L.R.A. 378; Roth v. Russell, 141 La. 581, 75

So. 418, and Causey v. Kansas City Bridge Co., La.App., 1st Cir., 191 So. 730.

In the Lapleine case, supra, a young child was injured when she was struck by lumber belonging to the defendant which broke away from its fastenings and tumbled off one of its cars. The evidence showed that, prior to the accident, the little girl had been a bright, intelligent, active and thoroughly healthy child. From the moment of the accident, she became and remained an invalid, seriously affected in mind and body, her nervous system shattered, subject to headaches and frequent fainting or falling fits. The defendant contended that the physical injuries directly inflicted upon the child were slight and unimportant and utterly inadequate in themselves to produce the disastrous results manifested: "that these results have been occasioned by the peculiar constitution of the child, who inherited from its mother a hysterical tendency or diathesis, the development of which has intervened as the operative and efficient cause of her affliction and sufferings; and that the accident is not, therefore, the true causa causans—the proximate and efficient cause—casting responsibility on defendant." [40 La.Ann. 661, 4 So. 877.] It was found, as a fact, that the child had a dormant constitutional disease prior to the accident but that this disease had never exhibited itself until she was injured. Under these circumstances, the Supreme Court held that the burden of proof was upon the defendants to show that the injuries the child received in the accident had nothing to do with the subsequent condition which had followed immediately after the happening thereof as it was found that, but for the accident, the child would have possibly remained in the good condition of health she enjoyed prior to the occurrence. In declaring thus, Mr. Justice Fenner, as the organ of the court, declared:

"Admitting, therefore, that the child had a latent hysterical diathesis, in order to escape liability it would devolve on defendant to show that such diathesis was by itself a sufficient independent cause which would have operated in producing or aggravating the damage independently of the accident.

"In this, defendant has entirely failed.

"If the hysterical diathesis concurred with the accident in producing the damage, in determining which of the two is the proximate cause, we must inquire which was the cause that set the other cause in motion.

\* \* \* \* \*

"The inheritance of an hysterical diathesis (if it existed) was a misfortune, but certainly not a fault, in this child; it in no manner diminished her right to protection from injury by the fault of defendant. Prior to this accident she had never suffered from this latent constitutional taint. But for the accident she might never have suffered from it. The accident was the direct, immediate and efficient cause which set in motion all other causes which created or aggravated the damage; and the defendant is justly bound to answer for these deplorable consequences of his fault."

In Roth v. Russell, supra, (which was decided prior to the passage of the Workmen's Compensation Act), it appeared that an employee of the defendant was injured through the negligence of defendant's foreman while engaged in removing the chassis of an automobile and that a short time later a pre-existing and dormant injury to the employee's lumbar vertebrae became active. The court, in holding that the flare up of the old injury was caused by the accident, said [141 La. 581, 75 So. 419]:

"The fact that within a short time after the accident, such troubles arose for the first time tends to show a causal connection between them and the injuries sustained by the plaintiff.

"But as plaintiff was in good health and strength at the time of the accident, the injury must be considered as the proximate, efficient cause of damage which set the other causes in motion, *In the absence of evidence that the enlarged vertebra produced or aggravated the damage independently of the said injury.* Lapleine v. Railway Steamship Co., 40 La.Ann. 665, 4 So. 875, 1 L.R.A. 378." (Italics ours)

In Causey v. Kansas City Bridge Company, supra, suit was brought under the compensation law, Act No. 20 of 1914, for the death of an employee who sustained a minor strain while at work, which aggravated a dormant cancerous growth from which he later died. The question presented to our Brethren of the First Circuit was whether the proof was sufficient to exhibit that the injury received caused the cancerous growth to become active and hastened the employee's death. The court found that, prior to the accident, the plain-

tiff had been a vigorous, active and hard-working laborer and concluded that the strain he suffered must necessarily have had serious effect on the cancerous growth. The court further observed [191 So. 732]: "That conviction is strengthened by the medical testimony to the effect that a blow or strain *could* aggravate or activate a dormant cancerous growth." (Italics ours)

It will be seen that the holdings in the foregoing decisions are based upon possibilities and that the courts have adopted the view that, where a person who enjoys good health suffers an accident and within a short time thereafter a dormant pre-existing illness or old injury disconnected with the accident flares up or becomes active, it will be presumed that the flare up was not a coincidence and that it was set in motion as a direct result of the accident. And it is sufficient for the plaintiff, in order to cast the burden of proof upon the defendant, to show by medical testimony that there is a reasonable possibility that the result claimed for did happen.

Let us therefore apply this line of reasoning to the facts of the case at bar. Mr. Peppers was in good health at the time of the accident and had never suffered from the pre-existing disease of colitis which was dormant in his system. Because of the injuries received, he was required to take to his bed and within three days thereafter, the colitis became active and he suffered hemorrhages from his lower bowel. These facts exhibit a strong indication and are most persuasive to the lay mind that there was causal connection between the injuries received in the accident and the subsequent activity of the dormant disease. Add to this that the doctor who treated the plaintiff expresses the opinion that, in view of the plaintiff's age and previous good health, there is a reasonable possibility that the inactive colitis was set in motion as a result of the accident. This evidence, while not certain and positive, is sufficient, when considered in connection with the sudden outburst of the dormant disease shortly after the accident, to cast upon the defendant the duty of producing negative expert testimony to show that the flare up was a mere coincidence and that it would have happened independently of the accident. That the defendant has utterly failed to sustain this burden by expert proof cannot be serious-ly disputed for, while Dr. Miller said that he could find no reason to account for the sudden activity of the dormant colitis, he concedes that the injuries received by plaintiff in the accident could have brought it on.

Counsel for the defendant, by supplemental brief, seeks to distinguish the facts of this case from those of the Lapleine and Roth cases on the ground that, in the cited matters, the medical experts were all of the opinion that the efficient and proximate cause of the injury or aggravation of the dormant disease was the accident or that the accident was a contributing cause of the aggravation of the dormant disease. We are, however, unable to discern that the court's opinions in those cases are predicated on the medical testimony produced by the plaintiffs but, on the contrary, the holdings are based upon the defendants' failure to produce expert proof to overcome the presumption arising from the particular facts and circumstances there presented.

Counsel for the defendant has also directed our attention to other cases decided by the Courts of Appeal of this State and one case of the Supreme Court wherein it is stated that, where the evidence in a suit for damages for personal injuries leaves a margin of possibility and probability that a particular physical condition may be the result of causes other than that set out in the petition, no damages predicated upon such condition can be recovered. See Grant v. New Orleans Railway & Light Co., 129 La. 811, 56 So. 897; Kolb v. Kinman, 5 La.App. 417; Landry v. Phoenix Utility Co., 14 La.App. 334, 124 So. 623; Brent v. Union Indemnity Co., 17 La.App. 689, 135 So. 735; Arender v. Grant Timber & Mfg. Co., Inc., 9 La.App. 132; Schultz v. L. Mundet & Son, Inc., La.App., 146 So. 177; and Howerton v. McCrary, La.App., 144 So. 68. While it is true that, in many of the cited cases, the courts reaffirm the general rule that a plaintiff must prove his damages with legal certainty and that elements of damages based upon possibilities and conjectures will not be permitted, an examination of the facts in all of these matters will readily reveal that the conclusions reached are founded upon positive proof on the part of the defendants that the particular injury or disease, for which recovery had been sought, arose independently of and was disconnected with the happening of the accident. Moreover, it

is to be noted that in none of these matters is the doctrine of the Supreme Court in the Lapleine and Roth cases cited or discussed.

█ Since we find that the latent disease in plaintiff's lower bowel was brought into activity as a result of the accident, it is obvious that the damages awarded him by the district court are inadequate. It has been proved without contradiction that, as a result of the flare up of the dormant colitis, plaintiff was required to remain in the Touro Infirmary under treatment for two weeks; that thereafter he was permitted to leave the hospital and return to his home where he was under the treatment of his physicians and that it was approximately 17 weeks from the date of the accident before he could return to work. For the pain and suffering and mental anguish endured by him from the date of the accident until he was restored to health, we believe that an award of $1,000 is adequate. In addition to this, plaintiff has proved the following expenses: doctors bills $175, hospital bills $179.11, nursing bills $56, and loss of salary $351.40 or a total of $761.51, for which recovery should be allowed.

For the reasons assigned, the judgment appealed from is amended by increasing the amount of the award from $250 to $1,761.51 and, as thus amended, it is affirmed at the cost of the defendant.

Amended and affirmed.