TATE, Judge
(dissenting).
I respectfully dissent. In my opinion, the conscientious and thorough majority opinion errs as a matter of law in reversing the trial court judgment. The majority is in effect holding that the eim ployee’s initial disability and his subsequent death are not compensable because, even though the employee had been symptom-free for two years before reactivation of his pain by the fall, the reactivation of the cancerous symptoms could be considered consistent with the normal progress of the disease.
Even though an employee is “already afflicted with a dormant disease that might some day produce physicial disability” a personal injury is compensable “that causes the disease to become active or virulent and superinduces physical disability,” Behan v. J. B. Honor Co., 143 La. 348, 351, 78 So. 589, 590, L.R.A.1918F, 862. As more recently stated, aggravations are compensa-ble when they “cause or contribute to a physicial breakdown or accelerate its occurrence because of a pre-existing condition,” Hemphill v. Tremont Lbr. Co., 209 La. 885, 25 So.2d 625, 627. See Malone, Louisiana Workmen’s Compensation Law, Section 232.
Further, the majority opinion overlooks the rule of law summarized by Judge (now Mr. Justice) McCaleb as organ of the court in Peppers v. Toye Bros. Yellow Cab Co., La.App.Orl., 198 So. 177, where in summarizing the settled jurisprudence, it is stated, 198 So. 182:
“[T]he courts have adopted the view that, where a person who enjoys good health suffers an accident and within a short time thereafter a dormant preexisting illness or old injury disconnected with the accident flares up or becomes active, it will be presumed that the flare up was not a coincidence and that it was set in motion as a direct result of the accident. And it is sufficient for the plaintiff, in order to cast the burden of proof upon the defendant, to show by medical testimony that there is a reasonable possibility that the result claimed for did happen.”
Even without this legal presumption which the majority did not see fit to apply, as did the trial court in arriving at the correct legal result from the virtually un-contradicted facts, I think that the evidence in this case unmistakably shows that the severe fall at work and the resulting hospitalization “triggered” plaintiff’s subsequent disability and complaints of pain.
In late 1954, by a minor operation a hard mass was removed from the left side of the decedent’s neck and found to be malignant. In January or February of 1955, major surgery was performed upon his neck to remove and prevent the spread of any further malignancy.
From February 1955 until the decedent’s accident on September 7, 1956, almost two years later, the decedent lived and worked without complaint, apparently fully cured. No traces or complaints causing suspicion of recurrence were found in the interval, despite periodic checkups by his family physician. During this interval, the decedent “did his work exceptionally well for his age”, his supervisor testified. (Tr. 172.)
While at work on September 7th, however, he suffered a rather severe accident. *17 Due to the water pressure in a large fire-hose he was holding and the slipperiness of the pool bottom, he was flung to the concrete floor and down an 11-foot incline. Along with other effects, he suffered brush burns and contusions down the left side of his body, including over the scar-site for the former operation which became inflamed and “angry-looking”. These objective signs of the decedent’s severe fall were still evident some ten days later, when — having suffered increasingly severe complaints of pain — the employee was admitted to the hospital, where he remained for 80 days. During this interval, he suffered from what the attending physician found to be a traumatic neuritis of the body area affected by the accident and also, as a result of the chest injury received, from pneumonia which (according to the attending physician) is a not infrequent result of a blow to the chest.
For almost two years before the accident of September 7, 1956, the decedent had been healthy and hard working and without unusual complaint of pain; thereafter, and always thereafter until he died, he suffered and complained of pain along and beneath the surfaces of his body involved in the accident. As a direct result of the accident, he was hospitalized for 80 days. A little over six months after the accident he was dead, never in the interval following the accident having been free from the pain which was activated by the accident.
Like the trial court, the unmistakable conclusion I draw from these facts — indeed, the common sense conclusion from them — is that the severe fall and involvement of the decedent’s body in the accident of September 7th played some significant part in reactivating pain and other disabling symptoms of the previously dormant cancerous condition. I think the District Court correctly accepted the opinion of the attending physician that the industrial trauma must under these circumstances be considered as aggravating the latent or dormant malignancy from a non-disabling into a disabling condition.
Admitting that medically the cause of cancer is not yet known, and that medical opinions differ as to whether a trauma can cause or aggravate a cancer, it was the considered opinion of this attending physician — who had attended the decedent both before and after the accident — that as a result of the work injury the employee’s physical resistance was weakened so that his body succumbed more quickly to the previously latent cancerous condition than would have been the case had there been no accident and the subsequently resulting shock, physical injuries, and hospitalization.
The majority feels free to disregard the testimony of this attending physician on the ground that he was “just” a general practitioner, whereas the other experts were specialists: an orthopedist, a general surgeon, and a radiologist. Pretermitting whether their specialties are such as to entitle their opinions to greater weight than that of a general practitioner concerning the theoretical cause of cancer or its aggravation — as to which there is considerable doubt[1] — ; I think an examination of the testimonies of the respective medical witnesses will show that the general practitioner alone testified concerning the legal issue of this litigation.
That issue is whether the accident contributed to or caused plaintiff’s disability, by making manifest symptoms previously unnoticed or by weakening his bodily re *18 sistance to cancer or otherwise; and that issue is not whether as a matter of general medical theory the blow itself caused the cancer to spread to the employee’s lungs or caused the cancer anew, again in the scar site where it had lurked, unnoticed and causing no complaints prior to the accident.
Dr. Breaux, the general surgeon, had seen the decedent prior to his operation of February, 1955, when the cancerous growth was removed. He had never seen him in the interval since then, either before or after the accident of September, 1956. Thus the principal force of his testimony is that the employee’s death from pulmonary metastasis (spread of the cancer to the lungs) “is in keeping [with] the natural history” of his disease (Tr. 229).
Dr. Romagosa, the radiologist, never saw plaintiff in his lifetime. He did have occasion to examine x-rays of the plaintiff’s chest and was of the positive opinion that the spread to the lungs must have taken place before the accident of September, 1956. This also was the opinion of Dr. Meuleman, the orthopedist, who spoke of the relationship of the industrial accident and the plaintiff’s condition in such terms as saying that “the cancerous process * * [and] * * * eventual demise” were “not related to the accident” (Tr. 206), or saying that plaintiff’s condition (when he saw him only after the accident and after the long period of hospitalization) the normal “end result of a cancer” (Tr. 205), or opining that the plaintiff’s cancerous condition was "consistent” with the cause of death (Tr. 207).
At the risk of too frequent reiteration, it is immaterial that, medically, the cancer had spread to the employee’s lungs before the accident and that the medical cause of plaintiff’s death was the cancer. The legally relevant and important conclusions are that prior to the accident plaintiff suffered no disability because of the cancer, that subsequent to the accident he consistently suffered from complaints of pain and was disabled, and that the cause of this disability was not only the pre-existing latent cancer now manifesting itself but also certain other otherwise minor chest and neck injuries which (combined with the cancer) produced his hospitalization, weakened bodily condition, and accelerated death. His body, able to cope with the cancer before the accident, following same was no longer able to do so — whether because of a physical or mental weakening, or because of some as yet scientifically undiscovered chemical trigger reaction, is immaterial.
Dr. Breaux, the specialist testifying for defendant, frankly stated: “No one knows the cause of cancer.” He himself, as well as Dr. Romagosa, did not believe that trauma could ever cause or aggravate cancer, although admitting that many other equally eminent doctors did not agree with such opinion. I do not think it proper to accept the testimony of these two specialists as outweighing that of the decedent’s personal family physician, who alone of the medical witnesses had the occasion to observe and to treat the employee both before and after the accident during the interval between the major surgery of 1955 and the employee’s death in 1957, and who testified from equally reputable medical theory that the accident aggravated the •employee’s latent cancerous condition into disability and accelerated his death.
The present majority opinion is in conflict with at least six other court of appeal opinions, which held a death or disability resulting from cancer compensable when as here the symptoms thereof were latent and unnoticed prior to the accident but became manifest immediately and continuously thereafter: Pixley v. Employers’ Mut. Liability Ins. Co., La.App. 2 Cir., 102 So.2d 113; Taylor v. Mansfield Hardwood Lbr. Co., La.App. 2 Cir., 65 So.2d 360; Vautrot v. Maryland Cas. Co., La.App. 1 Cir., 32 So.2d 500 (non-malignant tumor); Custer v.. Higgins Industries, La.App.Orl., 24 So.2d 511; Causey v. Kansas City Bridge Co., La.App. 1 Cir., 191 So. 730; Broussard v. *19 Union Sulphur Co., 5 La.App. 340. These cases correctly applied the presumption that in such circumstances, the aggravation of the pre-existing cancer is presumed to have resulted from the industrial accident, even though many medical specialists do not concur that such is as yet medically proven.
The unfairness of the present result is illustrated by a comparison of the denial of recovery in the present case with the af-firmance of recovery in cases of disability arising by reason of traumatic neurosis.
In the latter type of cases, a disability is held compensable when because of an accident an employee’s attention is centered upon imaginary ailments to the point where neurotically he is unable to work. In the present case, the employee had been untroubled by the latent cancerous condition during the two years following his major surgery; as far as he and the world were concerned, he was among the 50% completely cured as a result of such surgery. As a result of the accident, however, his attention was centered on the left side of the body and on the scar-site of the previous surgery, and he suffered severe and constant and disabling pain. Because the majority finds that the cause of these pains was, not an imaginary ailment, but a (previously unnoticed) pre-existing truly serioits condition, the employee’s disability is held to be non-compensable!
In my humble opinion, my esteemed brethren of the majority have fallen into error on this occasion by overlooking that the test of compensability is not whether the aggravation of a pre-existing condition can be scientifically proven to have occurred as a chemical or test-tube truth; instead, the judicial inquiry should be whether, as the result of a work-accident, the previously non-disabling disease now produces disabling symptoms. The test is not whether the accident aggravated the cancerous condition itself by causing the dread cells to multiply or spread faster; the test is instead whether as a result of the accident the symptoms are now manifest so that the employee, previously outwardly healthy, now suffers pain and is no longer able to carry on his duties. That is, compensable aggravation is measured in relation specifically to external disability to perform former duties (rather than by reference to medical speculations concerning the general nature of cancer). And by that yardstick, the widow of the decedent should recover.
I respectfully dissent from the majority’s reversal of the district court judgment awarding compensation herein.

. Under commonly accepted definitions, the first specialist is primarily concerned “with the correction of deformities of the limbs, spine, etc.”; the second, “with mechanical or operative measures for healing diseases, injuries, or deformities”; and the third, “with the use of radiant energy in the diagnosis and treatment of disease”. Maloy, Medical Dictionary for Lawyers (2d Ed., 1951), pp. 428 (“Orthopedics”), 525 (“Surgery”), and 481 (“Radiology”). (Italics ours.)