221 So.2d 908 (1969)
Julius M. MILLER, Plaintiff-Appellee,
v.
ALLSTATE INSURANCE COMPANY et al., Defendants-Appellants.
No. 7633.
Court of Appeal of Louisiana, First Circuit.
April 14, 1969.
*909 Charles W. Franklin, of Franklin & Keogh, Baton Rouge, for defendants-appellants.
Benard Kramer, Howard B. Gist, Jr., Alexandria, for intervenor-appellee.
Before LOTTINGER, ELLIS and BAILES, JJ.
BAILES, Judge.
This is a tort action. On January 25, 1966, the automobile driven by plaintiff, Julius M. Miller was involved in a collision with a tractor-trailer rig owned by Prudhomme Truck Tank Services, Inc., driven by its employee, James Bertinot, and insured by Allstate Insurance Company, all of whom were named defendants in this action to recover property and personal injury damages. Industrial Indemnity Company, the workman's compensation insurer of plaintiff's employer, intervened to recover workman's compensation benefits and medical and hospital expenses actually paid to plaintiff in the event his action proved successful. Judgment was rendered in favor of plaintiff and against the defendants, in solido, in the sum of $41,762.79, with interest from judicial demand until paid. This amount included stipulated property damages of $300.00 and medical expenses of $1,462.79; $10,000.00 for pain and suffering; and, $30,000.00 for loss of past, present and future wages. The claim of the intervenor was recognized and ordered paid by preference. Prudhomme Truck Tank Services and Allstate perfected this appeal. Plaintiff answered the appeal seeking an increase in the quantum of the award. The judgment is affirmed.
The question of liability has not been raised on this appeal. The accident occurred at the intersection of Louisiana Highways 22 and 44 in Ascension Parish west of Sorrento. Plaintiff was driving north on Highway 44, the favored roadway, and the vehicle driven by James Bertinot was traveling west on Highway 22. Bertinot, failing to heed the stop sign and flashing red light controlling his path, drove his vehicle into the right rear fender of plaintiff's automobile. The trial court concluded that the "sole and proximate cause of the accident was the failure of the truck driver James Bertinot to bring his vehicle to a stop at the stop sign before entering the intersection." This conclusion is amply supported by the record before us. We pass, therefore, to consideration of the primary controversy.
Appellants vigorously urge that plaintiff has failed to bear the burden of proving his damages by a preponderance of the *910 evidence. This claim is based upon the contention that plaintiff's physical deterioration could be attributed to several reasons other than the accident.
After the accident plaintiff did not seek medical attention for several weeks, during which period he attempted, though in pain, to remain at his job. Finally, his condition became such that he sought the services of a doctor.
Plaintiff was first seen, February 9, 1966, by Dr. Robert H. Potts, a general practitioner, who diagnosed his condition as a mild lumbo-sacral strain, x-rays having failed to reveal a fracture. He was given muscle relaxants and ultra sound treatments. Examination by a urologist on February 21st revealed chronic prostatitis.
On March 15, plaintiff consulted Dr. H. H. Hardy, a general surgeon, to whom he complained of pain in the area of the fifth lumbar vertebra. Dr. Hardy concluded from his examination, which included two myelograms, that plaintiff's condition was muscular in origin, a soft tissue injury, and that it was not due to a ruptured disc. This muscular pain, the doctor testified, could possibly be related to pyorrhea and extensive infection he found in plaintiff's mouth or could be due to aggravation by the accident of back injuries sustained by plaintiff in 1959 and 1961. Dr. Hardy recommended dental surgery which plaintiff, in fact, underwent. He last saw plaintiff on April 18th and referred him to Dr. T. E. Banks, an orthopedic surgeon.
From his examination, Dr. Banks, who had treated plaintiff for the 1961 injury and released him to go back to work, concluded that plaintiff's difficulty was due to reaction from the myelograms and muscle spasms. He felt plaintiff would recover in a short time and recommended that he return to his work.
On May 10, 1966, plaintiff consulted Dr. Duanne Forman, a neurosurgeon. His diagnosis was sciatic nerve root compression based on tenderness of the low back at the L4-L5-S1 level. On May 25th plaintiff was admitted to the hospital by Dr. Forman who concluded from a myelogram that plaintiff was suffering from a rupture of the L4 disc. A hemilaminectomy was performed three days later. Dr. Forman found that the disc protruded but was not etruded or ruptured and that plaintiff's fifth lumbar nerve root was compressed due to the protrusion of the fourth intervetebral disc. The nerve root was decompressed by removal of portions of the lamina. When he last saw plaintiff in October, Dr. Forman felt plaintiff was improving but stated that he was still symptomatic and unable to return to his former employment. In addition, Dr. Forman testified that plaintiff's condition could have resulted from aggravation by the automobile accident of a previously existing condition. However, he also testified that the condition could have developed without the intervention of the accident or could have been caused by changing an automobile tire.
Plaintiff returned to Dr. Banks on February 7, 1967. Plaintiff reported his surgery and stated that though the sharp pain in his back had been relieved, a dull pain persisted. Plaintiff also related his present pain to an incident four or five months earlier when he changed a tire on his automobile. He told Dr. Banks he felt no strain at the time but suffered the next day. Dr. Banks found no sign of muscle spasm and concluded plaintiff's pain was caused by tightness of the muscles which develops with age and scarring due to surgery. No treatment was recommended but Dr. Banks felt plaintiff would not be able to exert full physical effort and would not be able to do the heavy labor required in his former employment as an electrician.
Thereafter, during the last six months of 1967, plaintiff was examined by three other doctors at the request of his attorney. Dr. William H. Heath testified that based on his single examination he was of the opinion *911 that plaintiff was suffering from low back pain, that plaintiff could not return to his former employment and that plaintiff's condition would not improve due to the time already elapsed and the treatment previously received. Dr. Charles V. Hatchette, an orthopedic surgeon, after examination of plaintiff concluded that plaintiff suffered from soft tissue injuries dating back to 1959 but that the immediate cause of plaintiff's condition at the time he saw him was the accident of January, 1966. He felt plaintiff could never return to steady, hard labor though he may in time become capable of sendentary work. Finally, Dr. C. W. Lowery, orthopedic surgeon, examined plaintiff, November 16, 1967. He felt plaintiff's condition, which he termed "postoperative status, laminectomy with decompression of L4-L5 area, symptomatic", was permanent. In addition, he testified that though plaintiff's condition could have reached its present stage without the accident intervening, he felt that the accident was the "triggering mechanism" which aggravated or reactivated plaintiff's previous injuries.
There is lay testimony that prior to this accident in January, 1966, plaintiff was a good and capable electrician able to perform all duties required of him, including the handling of heavy conduit pipe, the job he was performing immediately prior to the day of the automobile accident.
Our evaluation of this testimony must be guided by the rule set out in the case of Peppers v. Toye Brothers Yellow Cab Company, La.App., 198 So. 177:
"* * * where a person who enjoys good health suffers an accident and within a short time thereafter a dormant preexisting illness or old injury disconnected with the accident flares up or becomes active, it will be presumed that the flare up was not a coincidence and that it was set in motion as a direct result of the accident. And it is sufficient for the plaintiff, in order to cast the burden of proof upon the defendant, to show by medical testimony that there is a reasonable possibility that the result claimed for did happen." Peppers v. Toye Bros. Yellow Cab Co., supra at 182; and cases cited therein. See also, Kline v. Columbia Casualty Co., La.App., 155 So.2d 82.
As we view this matter, plaintiff, at the time of the automobile accident, was enjoying good health, having experienced a satisfactory recovery from previous back injuries. The accident caused either new back injuries or reactivation of the symptoms of the pre-existing injuries. In either case, plaintiff has established a prima facie claim.
It was thus incumbent upon the defendants to overcome the case submitted by plaintiff. The defendants failed to bear this burden.
The inference raised that plaintiff's pain was the result of pyrrohea or prostatitis simply does not proponderate. The doctors who testified to these conditions admitted the possibility of a causal relation between their existence and plaintiff's discomfort but would go no further. Moreover, these possibilities are somewhat diminished when considered in relation to other testimony. Plaintiff's pain did not cease upon removal of his diseased teeth thereby negativing the possibility that the pyrrohea and mouth infection was the cause of his condition. The prostatitis was diagnosed as chronic. Plaintiff evidently had experienced no back pain resulting from this condition prior to the accident. If, after the accident, his discomfort resulted from this condition it must be related to the accident.
Secondly, defendants explored the possibility that plaintiff's condition was simply the result of the processes of aging and his previously injured back. Though the doctors would not discount this possibility and testified affirmatively that plaintiff's condition could have deteriorated to its present level even absent the accident, the *912 fact remains that immediately prior to the accident it had not.
Finally, defendants place much reliance on the fact that in September or October of 1966 plaintiff strained his back while changing a tire on his automobile and argue that his condition thereafter was related to this episode, an independent intervening cause. This, of course, is a possibility, but one we feel unproved. Subsequent to this episode, and though in pain, plaintiff did not feel it necessary to seek medical attention. When he did see Dr. Banks several months later, the doctor found no muscle spasm and attributed plaintiff's symptoms to conditions pre-existing the tire change, that is to scarring and to the tightness of muscles experienced in old age.
We conclude, therefore, that plaintiff's present condition, an injured back causing severe pain and disability, is a direct result of the collision with defendants' vehicle. Though his injuries were originally diagnosed as minor, they apparently became worse due to aggravation of pre-existing weakness. Furthermore, we find that plaintiff's condition has become static and that it prevents him from returning to his former employment as an electrician.
The awards given by the trial court for these injuries are, in our opinion, neither excessive nor inadequate. In awarding $30,000.00 for loss of past, present and future wages we are unable to find that the trial court abused the discretion vested in him. Pennington v. Justiss-Mears Oil Co., 242 La. 1, 134 So.2d 53. The $10,000.00 award for pain and suffering, if considered to include compensation for future pain and suffering, a consideration somewhat ambiguous in the judgment, is adequate. The other damages were stipulated.
For the foregoing reasons the judgment appealed is affirmed. The appellants are cast for costs.
Affirmed.