## WELLER ET AL. v. THE TURNERIZED ROOFING CO. ET AL.

—

(July 1, 1930. Opinion and Decree.)
(July 23, 1930. Rehearing Refused.)

—

Henry & Cooper and John May, of New Orleans, attorneys for plaintiffs, appellees.

Milner & Porteous and P. M. Milner, of New Orleans, attorneys for defendants, appellants.

HIGGINS, J. This is an appeal from a judgment awarding compensation to the widow and minor children of a deceased workman under the Compensation Law of this state (Act No. 20 of 1914, as amended).

Louis Weller, the deceased, was injured on September 19, 1928, by reason of a fall from a roof of a building upon which he was working. He fell a distance of fifteen feet and landed upon the pavement, striking his left side, hip, thigh and knee. Following the accident, Weller, with commendable fortitude, sought to resume his labors, but the foreman declined to permit him to work and ordered him to return to his home. He also attempted to return to work on each of the two succeeding days, but was not permitted to do so by the foreman. He complained of a severe pain in his hip and left leg, but continued to walk about until September 23, 1928, when he was obliged to go to bed. His condition became worse, he developed temperature, and on the advice of his physician was removed to the hospital on September 30th, where, on October 3, 1928, he died.

It is the contention of plaintiffs that Weller's death was due to the injury which he received in the course of his employment, and it is insisted on the part of defendants that his death was due to natural causes, entirely disconnected with his accident. The issue which we are called upon to decide, therefore, is whether Weller's death on October 3rd was due to the fall from the roof, which occurred on September 19th, some fifteen days before.

In determining questions of this sort, we have heretofore observed that we must very largely depend for guidance upon the evidence given by medical experts. In this instance, five physicians have testified, all of them men of high standing in their profession and most impressive and candid in their testimony. Superficially considered, this expert testimony would appear contradictory, but the evidence as a whole upon closer view agrees in the essential particulars. Wel-

ler's death was due to pneumonia. Pneumonia, all of these learned gentlemen of the medical profession agree, is caused by the pneumococcus germ, which, we are advised, is ever present in our respiratory tract. The pneumococci, we gather from the testimony, are usually harbored by all of us without harmful results. It is only when the bodily resistance is lowered by shock, or exposure, that they are capable of infecting us with the virus of pneumonia. Sometimes the patient is afflicted with what is commonly called a cold and which, we are told by the doctors, is a low-grade infection. We do not understand, however, that influenza or coryza is ever present or necessarily precedes the development of pneumonia. Consequently the somewhat conflicting evidence as to whether Weller, some days prior to his demise, exhibited symptoms of influenza or not, is of little or no importance, since it is clear from the testimony that pneumonia may develop without coryza and all the experts agree that a violent physical shock affects the susceptibility to pneumonia. Dr. S. J. Rosenthal, for plaintiff, a practing physician for more than eighteen years, was positive that Weller's death was due to pneumonia superinduced by the shock which resulted from the fall from the roof. Dr. Charles W. Duval, for plaintiff, is a professor of pathology and bacteriology in Tulane University; he has wide experience and enjoys a splendid reputation, frankly and generously attested by Dr. Bradburn, defendants' expert. He is positive that Weller's fall was directly responsible for his death. Dr. Muir Bradburn, for defendant, a practicing physician of seventeen years' standing, said that any violent physical shock affects the normal resistance of the body and increases the susceptibility to pneumonia. Dr. Charles L. Eshleman, for defendant, a graduate of Tulane University, with twenty-four years of experience, indorsed the same theory of increased susceptibility to pneumonia in a state of lowered bodily resistance due to shock or trauma. Dr. H. Gessner, for defendant, who has been practicing thirty-five years in this community, and who has had considerable experience with cases of trauma, also indorsed the statement of the other physicians to the effect that pneumonia resulted from the increased activity of the pneumococci germs due to a lowered bodily resistance and increased susceptibility to infection, which could be due to violent physical shock or trauma.

It thus appears that all of the experts are in singular agreement upon the main features of this case. Of course, they do not agree in all particulars. For example, Dr. Duval and Dr. Rosenthal, for plaintiff, are most positive in their statement that in their opinion Weller's death was the direct result of the fall, while Drs. Bradburn, Eshleman, and Gessner, for defendant, do not go to this extent, but they do say, in effect, that Weller's death might have been due to the fall, because of their adherence to the view that the development of pneumonia is always preceded by lowered vitality and a weakened bodily resistance, which they concede may be superinduced by trauma. Dr. Bradburn, who has had unusual experience in cases of traumatic injuries, having been in charge for a number of years of the ward in the Charity Hospital where such injuries are treated, testified that in all cases of trauma, precautions were invariably and immediately taken to guard against the development of pneumonia, though, in justice to Dr. Bradburn, it must be said that he was of the opinion that traumatic pneumonia usually resulted from an injury to the chest and only occasionally, in the case of elderly people, from an injury to the hip.

The conclusion we have reached in this case does not accord with our first impression, for we confess to much incredulity when the proposition was first advanced in argument, that pneumonia, the admitted cause of Weller's death, was due to a trauma resulting from a fall, causing injuries to the knee, hip, and thigh, but a consideration of the testimony of the medical experts, whose eminence and standing in their profession is clearly apparent from the record, compels us to yield our original views.

In the case of Colquette v. La. Central Lumber Co., 11 La. App. 140, 119 So. 714, which was brought under the compensation law for the death of an injured workman, the injury was to the deceased's ankle and foot. He died from pneumonia. The court in allowing recovery in that case held (syllabus):

"Where the testimony of the medical experts, as to whether the deceased died as the result of injuries received or from natural cause, is conflicting and irreconcilable, and the testimony of the lay witnesses tends to corroborate the testimony of the doctors, who, were of opinion that the death was caused by the accident, the finding of the trial judge that there was causal connection between the injury and the death will not be disturbed."

In Henderson v. La. Power Company, 9 La. App. 475, 121 So. 217, a workman was injured as a result of a tree falling on the end of an axe, which caused the blade of the axe to ·strike the deceased in the forehead, inflicting a severe wound. He developed pneumonia and died and the court allowed recovery by his dependents. In the syllabus in that case it was held:

"Where injury caused by blade of axe striking employee above the right eye caused an illness which continued until his death with pneumonia, the presumption is that the injury caused the illness or aroused the disease resulting in death and his employer is liable for the payment of compensation to his parents under Act No. 20 of 1914, the Employers' Liability Act."

In discussing the effect of the expert testimony in that case, the court made the following observations:

"And in so far as the expert testimony went we think it established that pneumonia had caused death, and there were not any other complications; however, all of the physicians agreed the fever which developed in the afternoon following the injury, was the result of the blow, and the evidence establishes that the illness continued until death, and considering this fact with the facts first above stated, the presumption is that the injury caused the illness or aroused the disease resulting in death, and defendant is liable (Behan v. John B. Honor Co., 143 La. 348; 78 So. 589, L. R. A. 1918F, 862; Fox v. United Chemical & Organic Products Co., 147 La. 865, 86 So. 311; Johnson v. Vernon Parish Lumber Co., 151 La. 664, 92 So. 219; Donahoe v. Scharfenstein, 154 La. 815, 98 So. 256).

"Had deceased recovered, it would hardly have been contended that defendant was not liable· for the disability, although it may have been prolonged by the disease, pneumonia, as in compensation cases, where the injury results in disability which is continuous, the law does not attempt to distinguish between that caused by the injury and that which may be more particularly attributed to disease (Caldwell v. City of Shreveport, 150 La. 465, 90 So. 763), and while there may be some distinction drawn between cases where the claim is for disability· and where the claim is for death as the result of the injury, we are of the opinion that the evidence establishes that the disease which was developed during the period of disability and illness therefrom could not have been aroused or contributed to by the injury or illness naturally resulting therefrom, and that the evidence in the present case does not establish such facts."

We are of the opinion that the evidence in the record supports the findings of the trial court, and, for the reasons herein assigned, the judgment is affirmed.