YARRUT, Judge.
This is a suit under the Workmen’s Compensation Act by the widow of a deceased worker, who claims her husband’s death from pneumonia was a direct result of the injury sustained by him during the course of his employment. There was judgment in the District Court awarding compensation at the rate of $17.29 per week for 400 weeks; $600 funeral expenses; $200 for medical expert fees, and all costs. Plaintiff filed answer to defendant’s appeal praying that the award be increased to $20.75 per week, 12% damages for failure to pay compensation when due, and 20% attorney *773 fees, together with interest on the full amount of the judgment.
There is no dispute that plaintiff’s deceased husband was 62 years of age, was employed by defendant as a freight handler and, while at work on April 2, 1958, fell and lacerated his scrotum and injured his left hip and left hand. He was promptly referred to Dr. John D. Andrews, defendant’s doctor, who administered 1500 units of anti-tetanus serum; cleaned, sutured and dressed the scrotal wound; prescribed hot sitz baths three times a day, and administered an anti-biotic drug bearing the trade name “Polycycline.” He was further treated by Dr. Andrews on April 7th, 9th and 11th. On April 15th he was admitted to the U. S. Veterans’ Hospital and expired the same day. The clinical diagnosis of the cause of death was given as lobar pneumonia and arteriosclerosis.
One year prior to the accident here, while at work for defendant in the rain, deceased contracted pneumonia and was paid compensation until cured a short time thereafter. He was treated then by Dr. Andrews, who gave him the same antibiotic drug (Polycycline) to combat pneumonia.
The primary question is whether or not the death from pneumonia was caused directly or indirectly by the accident. The law is well-settled. LSA-R.S. 23:1021(7) defines an injury as a violence to the physical structure of the body and such disease or infection as naturally results therefrom, but in no case to include any other form of disease or derangement, however caused or contracted. In other words, if the medical testimony can establish that the pneumonia resulted from the accident, it is compensable.
That plaintiff must prove her case by a preponderance of the evidence, not merely make it possible or speculative, is likewise too well established to admit of doubt.
Dr. Morton Brown, who attended deceased on April 15th when he was admitted to the Veterans’ Hospital; and Dr. Harry E. Dascomb, Professor of Medicine at Louisiana State University School of Medicine, and a specialist in internal medicine, testified for plaintiff. Dr. John D. Andrews and Dr. Rudolph J. Muelling, Jr. testified for defendant.
Dr. Brown, after reviewing the injury of April 2nd and the therapy which followed, stated that the events could have contributed to developing pneumonia; the fact that deceased had pneumonia previously, predisposed and made him more susceptible to a recurrence. When questioned about the autopsy which showed cystic disease of the right lung, he said such a condition is usually chronic and generally a predisposition to pneumonia, more so than if the injury had been anatomical. He was positive that'the sequence of events already explained herein, could have caused the pneumonia.
Dr. Dascomb’s testimony may be summarized as follows: There is a reasonable probability of a causal relation between the injury sustained at the time of the accident, the subsequent therapy, and the ensuing pneumonia. He outlined that the disease may have been the result of aspiration of nasal secretions at the time of the fall that entered the lung; and that the bacteria could have gained entrance through the scrotal wound, and progressed to the lung by way of the lymphatics.
Dr. Muelling epitomized his testimony by admitting the cystic condition of the lung contracted in 1957 made deceased more susceptible to pneumonia; prone to respiratory trouble.
Dr. Andrews’ testimony may be summarized as follows: There was no causal connection between the injury and the pneumonia, as trauma can never cause lobar pneumonia. Upon his initial treatment he. did not consider decedent badly injured, and thought he could return to work in approximately two weeks ;■ and the sole reason for not discharging decedent on April 11, 1958, was decedent’s complaint that his wrist hurt.
*774 There are cases-holding' that death from a fatal disease, resulting from the weakened condition of the body, caused by accident, is compensable. A case directly in point is Weller v. Turnerized Roofing Co., 14 La.App. 150, 129 So. 443. Weller sustained an injury from a fall. Two weeks later he died of pneumonia. The Court decided the case strictly on the medical testimony, being satisfied that the shock caused by the accident seriously depleted resistance to the pneumonia; and concluded that, had deceased recovered, it could hardly have been contended that disability had not been prolonged by the pneumonia. Similar cases are: Henderson v. Louisiana Power Co., 9 La.App. 475, 121 So. 217; Colquette v. Louisiana Cent. Lumber Co., 11 La.App. 140, 119 So. 714.
Counsel for the defendant, realizing the impact of the Weller case, seeks to differentiate it from the case at bar as follows:
“Weller suffered a progressive de-dine from the time of the accident until the time of his death. Weller had bronchial pneumonia, and not lobar pneumonia as did Williams. Weller suffered a great degree of shock, all experts in the Weller case agreeing that ‘violent physical shock affects the susceptibility to pneumonia.’ Weller was quite immobilized due to the condition of his leg. The testimony points out that it was extremely painful for Weller to move. The degree of immobilization in the case of Williams is not clear, but it is certain that it was not at all commensurate in degree to that which occurred in the Weller case. The record also indicates that Weller was an extremely healthy individual prior to the accident. Weller was a young man, in good health, thus making a connection between the injury and his death more plausible. * * * ”
We can see no fundamental distinction between the two cases. Considering the age of the deceased, his previous contraction of pneumonia while employed, the treatment given after the first pneumonia attack in 1957; the therapeutic treatment by the same company doctor following the accident, and the preponderance of the expert testimony, we must conclude that the pneumonia resulted from deceased’s general weakened condition caused by the accident.
Plaintiff’s plea for penalties and attorney’s fees must be disallowed. There is nothing in the record to indicate that the action of defendant was arbitrary or capricious.
For the reasons assigned, the judgment of the trial court is affirmed, rejecting the demands of both appeals.
Affirmed.