WATSON, Judge ad hoc.
Plaintiff, Mrs. Margie Aline Felder, who is the surviving spouse of Dewitt B. Felder, filed this suit to recover workmen’s compensation benefits for the death of her husband. Defendant, Hartford Accident and Indemnity Company, is the insurer of the late Mr. Felder’s employer, Billups Western Petroleum Corporation. The trial court dismissed plaintiff’s suit, giving as its reason the failure of plaintiff to prove the actual cause of death. No autopsy was performed, and the trial court stated:
“The opinions indicate that the decedent did expire from a heart attack, however, these are medical opinions only. The Court can attach no weight to opinion evidence unless same is supported by some factual evidence.” (Reasons for Judgment, TR. 34)
Plaintiff has appealed.
There is no question that the deceased was in the course and scope of his employment at the time of his collapse which occurred at the service station which he managed.
Charles Felder, son and co-worker of the deceased, was with him on the date of his death, December 24, 1969. The deceased was the manager of the Billups Station on Plank Road in Baton Rouge, and his son was working for him. He described the situation at the station as follows :
“ . . .he called me and told me. I don’t have any help, I’m by myself and I’ve done run myself about to death around here and done fixed lots of flats, said just don’t open up that station over there, he said stay over here and help me, and that’s what I did.” (TR. 56)
*781 Mr. Felix Fletcher testified that he was also working at the station that day:
“And he said you ain’t doing nothing, you’re going to come and help me, said, they’re running us to death around here. So I stayed and helped him.” (TR. 87)
Charles Felder stated that his father sat down on a merchandise shelf; fell off the shelf onto the floor; turned blue; had labored breathing; was taken to a hospital by ambulance; and was dead by the time his son arrived at the hospital.
Both Charles Felder and Felix Fletcher testified that the deceased was doing lifting of batteries and tires in the storeroom in connection with his job on the day of his death. Mr. Richard B. Hughes, a truck driver who made a delivery to the station the day before testified that the deceased "... lifted a little”. (TR. 109)
Dr. John B. Stotler, a New Orleans physician with extensive experience in the field of cardiology, testified as to the probable cause of death of the deceased. He was not accepted by the trial court as an expert in the field of cardiology, because he was not “board certified” (TR. 132) in that field. He testified as follows:
“A In my experience the most likely cause of death would be a coronary thrombosis, or heart attack, in common language.

Q What are the reasons why this fits better than anything else ? The reasons for your opinion now.
A Several reasons. First of all, his heart was being overworked, and this hypothetical person we’re speaking of, according to the testimony which I heard this morning, did expend himself as far as energy is concerned, he did die a very sudden death with cyanosis, and there are very few things which can do this in this fashion with the history we have presented to us. 137) (TR.

Q . . . it is your primary conclusion or most likely conclusion that what Dewitt Felder had was a coronary thrombosis. You think that’s the most likely.
A I can’t think of anything else that fits the picture, so that is my conclusion, yes.” (TR. 159)

“Q Dr. Stotler, .... Assuming that one hundred per cent would be sure one way or another, what percentage would you assign to the fact that his coronary, the work he did that day had nothing to do with his heart attack that afternoon?
A . the sequence of events, and what have you, lead me to believe that ninety-five per cent of the time in a case like this it would be due to, I mean related to his work with preexisting disease,
A Ninety-five per cent.
Q —probability that work did precipitate the attack, in your opinion then, and you would assign five per cent to other probabilities unrelated to work ?
A Right.” (TR. 165-166)
Dr. Douglas L. Gordon, a deputy coroner for East Baton Rouge Parish, Louisiana on December 24, 1969, testified that he saw the deceased in the emergency room of Baton Rouge General on that date.
“A . the patient had apparently fallen over while working at a filling station here in Baton Rouge shortly before that, approximately thirty or forty minutes before the time I saw him, and he was dead on arrival at the Baton Rouge General. We felt that because of the type of *782 death, the sudden onset, and as near as we could find out he had not been ill before, we thought he had probably had a coronary thrombosis as the cause of death. (TR. 185)

Q And you did fill out whatever papers are required to be filled out by—
A By the coroner’s office, yes, sir.
Q In other words, you were the physician who handled this case for the coroner’s office ?
A Correct.
Q And you along (sic) ?
A Yes, sir.
Q Now I would assume that it was your opinion, based upon such facts as were known to you or such information as was available to you, that the most probable cause of this man’s death was coronary thrombosis?
A Yes, sir.” (TR. 186)

“Q And you are not prepared to say, are you, sir, that coronary thrombosis is the only conceivable, possible cause of this man’s death ?
A No, I wouldn’t say it was the only possible cause, I think the percentages are very high, you know, probably ninety per cent or so, that that’s what did it.” (TR. 193)
Dr. David W. Wall was qualified as an expert in the field of internal medicine with a subspecialty in cardiology. His testimony was inconclusive, but he did state that “a cardiac or cardiovascular cause” (TR. 218) was the most likely cause of the death of Mr. Felder. He also stated that he could not exclude Mr. Felder’s exertions during, the day as a cause of his heart attack. ;
Dr. Virginia Strange Thurmond was qualified as an expert in the fields of internal medicine and cardiology. She testified as to the work connection with the death:
“Statistically, given a patient that we’re postulating has coronary artery disease and subsequent coronary insufficiency and/or arrhythymia and sudden death, who has done extra exertion that particular day, there is a statistical relationship that his increased exertion that day might have contributed to his death.” (TR. 313)
We have concluded that the trial court was in error in holding that the cause of Dewitt B. Felder’s death was not proved by a preponderance of the evidence. The medical experts were unanimous as to the cause of death. In a compensation action, the court depends largely upon medical experts in determining cause of death. Weller v. Turnerized Roofing Co., 14 La.App. 150, 129 So. 443 (1930).
In the absence of any conflicting evidence, the testimony of Dr. Gordon, who acted in his capacity as deputy coroner, would be conclusive as to the cause of death. LSA-R.S. 33:1561; Hull v. Liberty Mutual Insurance Company, 236 So.2d 847 (La.App. 1 Cir. 1970); writ denied 256 La. 862, 239 So.2d 361.
Further, we believe that the testimony of Dr. Stotler and Dr. Thurmond, quoted above, establishes that Mr. Felder’s death resulted from a work related accident within the meaning of the Louisiana Workmen’s Compensation Act. Smith v. International Paper Company, 73 So.2d 652 (La.App. 2 Cir. 1954) ; Vicknair v. Avondale Shipyards, Inc., 220 So.2d 580 (La.App. 4 Cir. 1969), application denied 254 La. 285, 223 So.2d 409; Brown v. Kaiser Aluminum & Chemical Corp., 250 So.2d 99 (La.App. 4 Cir. 1971), writ denied 259 La 807. 253 So.2d 66.
Therefore, it is ordered, adjudged and decreed that Mrs. Margie Aline Felder *783 have judgment against Hartford Accident and Indemnity Company at the rate of $45.00 per week for five hundred weeks beginning December 24, 1969, plus medical and burial expenses according to law, together with legal interest from the due dates, until paid.
All costs are assessed against defendant-appellee.
Reversed and rendered.