FRUGÉ, Judge.
Suit was filed by plaintiff, Wallace Vid-rine, against New Amsterdam Casualty Company, the workmen’s compensation carrier of plaintiff’s employer, Deo Fruge. The plaintiff seeks workmen’s compensation benefits for total and permanent disability which resulted from his contracting tuberculosis during the course and scope of his employment. A motion for summary judgment was filed March 30, 1961 by the defendant, on May 9, 1961 the trial court rendered judgment over-ruling the motion for summary judgment. Answer was filed by defendant on June 29, 1961 and a judgment in favor of plaintiff allowing his compensation benefits at the rate of $35.00 per week for a period not to exceed 400 weeks *667 with interest thereon at the rate of five (5%) per cent on all past due installments and all medical expenses incurred up to the sum of $2500.00; from this judgment defendant perfected an appeal to this court.
It appears from the record that plaintiff, Wallace Vidrine, was forty-one years of age when this suit was filed. For the past seventeen years, Vidrine was employed as a dragline operator; at the time of the accident he was employed in that capacity by Deo Fruge, a contractor. The dragline which he operated was not a hydraulic or power operated dragline, but a mechanical one, which was operated by using a series of levers. The operation, therefore required rather strenuous labor.
It appears from the record that prior to August 17, 1960, Vidrine was a healthy, hardworking individual, who since being employed by Deo Fruge, had not missed any work due to illness.
A few days prior to August 19, 1960, while working in rather inclement weather, petitioner began to feel ill but continued to work for two days. The following day he felt too ill to return to work and consulted Dr. Gordon Soileau of Ville Platte who diagnosed his illness as pneumonitis. Vidrine, being ill and having fever, remained in bed for two days. On August 19th, the dragline and crew of his employer were still working in a marshy area located near Big Lake, approximately fifteen miles south of Lake Charles, Louisiana. His employer, Deo Fruge, who was away from the job site, had placed his son, Clyde Fruge, in charge of operations with instructions to call Vidrine in Ville Platte, should an emergency arise. On August 19, 1960, Clyde Fruge telephoned the plaintiff Vidrine requesting that he report to work in order to attempt to get the dragline (which had bogged down) out of the swamp or marsh. Vidrine replied that he was ill; that he might possibly get his wife to drive him to the job site, and although he did not feel that he could do any work, he could possibly supervise the job. After he arrived on the job site, Vidrine was forced to mount the dragline and operate it himself in an effort to get it unbogged. After a day of very strenuous work in inclement weather he was finally able to unbog the dragline. Vidrine then returned to his home, remaining in bed until the following Monday when he attempted to return to work. At that time he found that he could no longer do the work he was doing prior to the episode of August 19, I960. Thereafter he began losing weight and was easily fatigued. Later he again attempted to work, but was easily fatigued and continued to lose weight; he began to have fever and night sweats and was forced to discontinue work all together. On November 7, 1960 the plaintiff was examined by Dr. Ramson K. Vidrine of Morganza, Louisiana, who diagnosed his case as tuberculosis. Dr. Vidrine sent Wallace Vidrine to have X-rays made at the Public Health Unit, which X-rays were later read by Dr. -Nathan Goldstein. The plaintiff was then formally referred by Dr. Vidrine to Dr. Goldstein who confirmed the diagnosis as tuberculosis.
Tuberculosis is specifically excluded by the occupational disease amendment to the Louisiana Workmen’s Compensation Act; see LSA-R.S. 23:1031.1. Generally, an occupational disease contracted by an employee which results directly from his employment is compensable and he need not show that he suffered an accident. On the other hand, if the disabling disease contracted by the employee is classified by the Act as an occupational disease, then in order to recover the employee must prove that the disability resulted from injury by accident arising out of and in the course of his employment.
We believe that the trial court correctly stated the law in its judgment, from which we quote the following:
“That there must be an accident is of course well settled. In Robichaux v. Realty Operators, Inc., 195 La. 70, 196 So. 23, the Supreme Court granted a writ of review and considered the case in which the Court of Appeal had *668 held that there could be no recovery because there had been no accident. The Supreme Court found that there had been an unusual occurrence which had caused the injury and that however unimportant this occurrence may have seemed at the time, it could be definitely pointed to as an unusual and unexpected happening- which had taken place. And it was further held that the fact that the unusual happening did not take place in the physical structure of the man himself, but in the performance of his work, was of little importance.
“In the case of Cannella v. Gulf Refining Company [La.App.], 154 So. 406, the plaintiff there had suffered an acute lead poisoning by inhaling the fumes from the paint which he was using. Apparently, the condition of Cannella was such that on that particular occasion he could not withstand the effects of the fumes of the lead paint and it was held that the lead poisoning had resulted from accident.
“In the case of Causey v. Kansas City Bridge Company [La.App.], 191 So. 730, there was no evidence of any external trauma and yet the Court held that the death of the worker was the result of an accident when he died from cancer.
“There are many cases dealing with this problem and it would serve no purpose to cite all of the cases which have dealt with this matter or with similar matters, heretofore. It is sufficient to state that the very recent case of An-drepont v. Calcasieu Paper Company [La.App.], 131 So.2d S8S, the Court of Appeal held, reversing the District Court, that, quoting from the case of Talbot v. Trinity Universal Insurance Company [La.App.], 99 So.2d 811:
“ ‘The jurisprudence is now well settled that, to constitute an accident within the meaning of the Workmen’s Compensation Statute in cases where the work of the employee requires physical effort and exertion, it is not necessary that the injury from which disability follows be the result of unusual physical effort if a diseased organ gives way or its function is impaired while the laborer is discharging his usual and customary duties and disability results for it to be compensable. * * *■ While it has been said a heart attack is not an accident within the purview of the Workmen’s Compensation Law, yet,, if an employee had a pre-existing heart condition which is aggravated by his-work, excessive heat, intense hard labor, sudden fright or attack, or any other stress that might aggravate such condition and cause disability or death, such-resulting disability or death would be compensable under the statute.’
See also the case of Cutno v. Neeb-Kearney & Company, 237 La. 828, 112 So.2d 628.
“In the Andrepont case, the Court finally concluded that the plaintiff was entitled to compensation for a period of disability as a result of an aggravation of a heart condition.”
In the Cutno case, supra, alluded to by the trial court, the Louisiana Supreme Court, in allowing plaintiff to recover, held that the evidence established that perforation of duodenal ulcer was caused or hastened by strenuous work of lifting sacks of flour in the course of employment as freight handler and hence constituted a compensable injury. Regarding the definition of “accident”, Justice Hawthorne, organ for the court stated:
“It is now well settled in Louisiana that the legal requirements are present to constitute an accident and an injury is compensable under our workmen’s compensation statute where excessive heat, heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition. See
*669 Hemphill v. Trement Lumber Co., 209 La. 885, 25 So.2d 625 and cases there cited. Nor is it necessary that the adverse result of such stress and strain develop at the time or at the scene of employment if the stress and strain were sufficient to have caused, contributed to, or accelerated the physical breakdown ultimately resulting in disability or death. See Dortch v. Louisiana Central Lumber Co., La.App., 30 So.2d 792.”
There seems to be no argument that plaintiff has tuberculosis and that his condition at the present time is such that he cannot return to gainful employment within the immediate future. The pivotal question to be decided is whether the disability caused by the tuberculosis resulted from an “accident”; and more specifically, whether the occurrence or episode of August 19, 1960 was the “accident” which precipitated plaintiff’s contraction of tuberculosis.
The depositions of several doctors were taken by the defendant. Although not one of the doctors stated that the incident of August 19, 1960 was the direct cause of the plaintiff’s developing tuberculosis, generally, the concensus of opinion was that theoretically a person with a relatively weak resistance harboring dormant tuberculosis germs could certainly develop a violent case of tuberculosis as a result of a single exposure to unusual and inclement weather while doing very strenuous work. Some of the testimony is as follows:
Dr. R. E. Dupre
“Q. Could you tell us how T. B. works, how you contract T. B. as a general rule?
“A. Well when you contract T. B., apparently a great majority of the people have a tubercular germ, like they have other germs in their mouth and throat, even the tubes of the lungs, I mean all of the germs are practically in your mouth but when you become ill, say from pneumonia or something of that nature or any kind of febrile condition or weakened condition, with fever, and then you have your — your resistance is lower and you are exposed to unusual, say like unusual weather, bad weather, and being sick, that could easily activate a dormant process, bring about, say a new primary process of tuberculosis.
“Q. And could it aggravate one that was just commencing to become manifest?
“A. Oh yes.”
Dr. Nathan Goldstein
“Q. Well, then boiling this down somewhat, if he had the disease in August of 1960, and went back to work at the same type of work as he told you he was doing, you feel that’s what finally brought about his incapacity to work, is that correct?
“A. That’s correct.
“Q. And there did not necessarily have to be any other intervening factors except for the fact he was out on his dragline working in this condition?
“A. That’s right.”
Dr. Ramson K. Vidrine
“Q. Doctor, I am going to ask you a hypothetical question assuming certain facts. Assume a person had been working for several years doing his work properly,, strong, of average weight for his height; all of a sudden, a few days, all of a sudden became wet and had the tuberculosis germ like most people do have in his lungs and would become wet and then develop pneumonia and while he was in this weakened condition of the lungs with pneumonia would be compelled to go to work within a few days while he still had fever, compelled to go back and do hard work and other exposure, would that accelerate or aggravate the *670 tubercular condition to the extent to start an immediate condition of tuberculosis ?
“A. Yes, sir.
“Q. Would one exposure be sufficient to do that?
“A. One episode of exposure?
“Q. Yes, in his weakened condition?
“A. Yes.
“Q. One exposure would be sufficient to—
“A. Flare it up.
“Q. To flare it up.
“A. Assuming the bug had been there dormant for years and suddenly weakened by something or other and flare-up, yes, one exposure is enough, one hunting trip is enough.
“Q. One episode of getting wet would be sufficient to fulminate the tuberculosis or aggravate it.
“A. Yes.
"Q. What do you mean by fulminating, just for my own knowledge?
“A. That’s a very rapidly progressing disease. Every day, if you would take a picture every day, you would see the pneumonia spreading.
“Q. That starts all of a sudden?
“A. You' see spots that would thicken and all of a sudden it would cavitate, it’s galloping, it’s galloping.
“Q. How long does it take to cavi-tate?
“A. Oh, just a matter of a few days.
“Q. In other words, you consider that kind of tuberculosis almost a violent type of tuberculosis, is that correct?
“A. A violent type of tuberculosis-That’s what the old doctors use to call it. We have a case in the Ville Platte hospital' last year. The man had t. b. for years and all of a sudden something happened and in a matter of a few days both lungs were annihilated.
“Q. With talking with Mr. Wallace Vidrine, is that your opinion of what Wallace Vidrine had?
“A. Yes, I think so.
* * * * * *
“Q. You know of no evidence that this man had any tuberculosis prior to this occasion, do you, doctor?
“A. No.”
Dr. Goldstein, internal medicine specialist, reviewed x-rays of the plaintiff taken on September 16, 1959, which showed no evidence of any pulmonary tuberculosis, and the x-rays taken on November 9, 1960, which did show evidence of a moderately advance active pulmonary tuberculosis. He stated such latter x-rays were the first specific evidence that the plaintiff suffered from tuberculosis and he felt that from its extent it had manifested itself sometime prior to these x-rays and that “the initial diagnosis of tuberculosis probably started to manifest itself in August, 1960”. (Tr-38). As previously stated, he agreed that the working incident could have exacerbated and been a prime factor in the manifestation of the tuberculosis. The evidence further shows a very marked loss of weight from 165 pounds in August, 1960, which is also corrobrative of the contracting or manifestation of the tubercular condition as of the August incident.
In the case of Books v. Keen & Woolf Oil Company et al., 9 La.App. 288, 120 So. 99, the employee died as a result of pulmonary tuberculosis. As the result of an accident, the decedent sustained an injury which fractured three of his ribs and he died approximately six months later. Two of the fractured ribs did not heal and the *671 doctors testified that the blow which he received aggravated a tubercular condition which plaintiff had prior to the injury. The widow was allowed to recover under the Workmen’s Compensation Act.
In the case of Brim v. Home Acc. Ins. Co., IS La.App. 681, 131 So. 762, the plaintiff won an award under the Workmen’s Compensation Act because of the death of her husband from a tubercular condition. The record reflects that the decedent fell from a ladder during the course and scope of his employment and this hastened the spread of an abscess of the brain brought on by a tubercular condition. We quote the following from the opinion of the court:
“ * * * Ryan [the decedent] appears to have been in good health prior to the accident and to have grown progressively worse after the accident. There is some doubt as to whether he returned to work in the interval between his fall and his death, but we are convinced that, if he did, it was not for more than a day or two, or merely sufficient to demonstrate his inability to continue.
“The question before us is whether Ryan’s death was due to or contributed to by the accident. As has been seen, nearly five months elapsed between the date of his fall and the day on which he was found dead in his room. It is the present contention of counsel for plaintiff that the fall had the effect of activating a dormant disease, tuberculosis, and hastening Ryan’s death, entitling his dependent to recover under the well-known jurisprudence of this and other states. Behan v. John B. Honor Co., 143 La. 348, 78 So. 589, L.R.A.1918F, 862; Bradbury’s Workmen’s Compensation, Third Edition, 326. We say present contention because it was originally claimed that the fall was the direct cause of Ryan’s death. However, since this is a suit in compensation, the strict rules of pleading are to be relaxed. Act No. 85 of 1926, p. 122, § 18, par. 4. The question presented is most difficult of solution, involving, as it does, the appreciation of medical testimony, upon which we must mainly rely in cases of this character, Landry v. Phoenix Utility Co., 14 La.App. 334, 124 So. 623. We realize that medicine like law is not an exact science and that it is in the heat of controversial disputation that its beneficent truths are forged. We owe much to that noble profession whose remarkable achievements have lengthened our days and lightened our hearts, but, in the nature of things, much remains to be discovered of the mysterious processes of life and of the cause of death and dissolution, and so it is that not one of the eminent physicians, who testified in this case, was able to say, with any confidence, exactly what caused Ryan’s death; whether trauma or the tuberculosis, singly, or in conjunction. * * The fact that five months elapsed between the time of the fall and the death of Ryan is also said to seriously weaken plaintiff’s contention that the accident was a contributing cause of Ryan’s death, but here,, again, Dr. Johns informs us that ‘it would be entirely compatible with the usual history of brain abscesses for a man to live that long with tubercular abscess.’
* * * * * *
“ * * * In Schlenker v. Garford Motor Truck Co., 183 App.Div. 166, 170 N.Y.S. 439, 441, it was held that medical testimony, to the effect that a trauma ‘of the kind which the employee received could excite a dormant tubercular condition into activity and accelerate death,’ in the absence of evidence to the contrary, was sufficient to support a recovery, notwithstanding evidence to the effect that no traumatic conditions prevailed at the time of death of the employee three weeks after the accident.
*672 “Our conclusion is that the plaintiff is entitled to recover.”
The case of Valentine v. Godchaux Sugars, Inc., La.App., 90 So.2d 442, was one wherein the petition alone was considered and the issue was whether the petition failed to state a cause of action. The exception was maintained in the lower court. In affirming the lower court,, the appellate court stated:
“The petition alleges that at some undisclosed time, apparently during the early part of the year 1955, he was employed by the defendant as a ‘pan operator’ or ‘sugar dryer’ and that he was suffering from a ‘pre-existing condition of pulmonary tuberculosis’. * * * He further alleges that at some undisclosed time in the early part of April 1955, ‘the exact date of which is unknown’, he began to have fever, to lose weight and to ‘experience other signs of illness.’ ” (Emphasis added.)
We are of the opinion that the Valentine case, supra, can be easily and readily distinguished from the instant case. In the Valentine case the plaintiff’s case was decided solely according to the facts alleged on the face of the petition; these facts certainly differ from the facts in the instant case.
The difference in the facts and the applicable law is strikingly shown by the following statements contained in the Valentine case, 90 So.2d 445-446:
“Counsel for plaintiff confidently cites Malone’s Louisiana Workmen’s Compensation Law Practice, 1955 Pocket Part, section 218, page 27:
“ ‘Our courts have held in the past that an accidental injury which demonstrably weakens the worker’s resistance so that a dormant tubercular condition is activated entitles the victim to compensation for the entire resulting disability. This conclusion should not be affected by anything contained in the Occupational Disease Section, for in such a situation the claimant is seeking compensation for an accidental injury, and tuberculosis is properly regarded merely as an aggravating factor.’
“We agree fully with this statement. It means that if there is an occupational disease which is within the contemplation of the pertinent amendment,, there may be recovery even without an accident and that if there is an accident there may be recovery even though the disability might not have resulted had there not been an already existing disease. And it means too that if there is no right to recovery for an occupational disease, there must be an accident, ‘an unexpected or unforseen event * * * producing at the time objective symptoms of an injury.’
“Our conclusion is that the allegations of the petition cannot be interpreted as stating anything except that the plaintiff is disabled as a result of the gradual development of a pre-existing condition and that this development cannot be said to have resulted from accident. There must be some actual occurrence which may be pointed to and which can be said to have aggravated or lighted up the therefore dormant condition. * * * ”
According to the medical testimony in the present case, plaintiff was previously ill with pneumonitis, but there was no evidence that he had any active form of tuberculosis prior to August 19, 1960, or that he was gradually developing tuberculosis. However, we find that the evidence clearly indicates that plaintiff’s disablement was a direct result of an actual occurrence, — Inis having to leave his home while still sick at the request of his employer, and while in a weakened condition performing strenuous work on August 19, 1960 under very unfavorable weather conditions. In our opinion the work-caused activation of his tuberculosis was an “accident” within the mean *673 ing of the compensation act, when according to the medica,! testimony such over-strenuous and prolonged exertions at work in such inclement weather in his fatigued and weakened condition could and did excite a previously dormant tubercular condition into an active and disabling form of tuberculosis.
After reviewing the record we are of the opinion that the trial court was correct in allowing plaintiff to recover.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.